JANE A. DUMAS, plaintiff in error, *vs.* JOHN NEAL *et al.*, defendants in error.

It was no abuse of the discretion of the court to refuse the injunction in this case, or to hold up a larger amount of money than he did.

Injunction.   Before Judge HALL.   Monroe county.   At Chambers.   February 26th, 1874.

Jane A. Dumas filed her bill against John Neal and the sheriff of Monroe county, making, in brief, this case:

Complainant, upon her marriage with her husband, James H. Dumas, entered into a marriage contract, by which she secured to her separate use all property she then had or which she might thereafter acquire, he receiving said property simply as trustee. This instrument was properly recorded. The marriage was solemnized in January, 1862. Her husband, within a short time thereafter, received into his possession, as such trustee, two slaves, of the annual value for hire of $200 00. These slaves he controlled, and received the hire thereof, until they were emancipated in 1865. He received, also, a legacy of $400 00, bequeathed to her by her uncle, Thomas J. Mann.

In the year 1865, her said husband, desiring to have the aid of complainant in keeping a boarding-house in the town of Forsyth, contracted that if she would give her personal services to such business, he would pay to her one-half the proceeds of this business. In pursuance of said agreement, during the years 1865, 1866, 1867, and up to the death of her said husband, which occurred in the spring of 1868, she gave her attention to such business, and in most instances he paid

over to her the amount due under their contract, amounting to between $200 00 and $400 00 per annum, as a part of her separate estate. She would then lend to him these various amounts. There is due to her on this account $1,000 00.

These various amounts, due to her from the estate of her deceased trustee, occupy the position of a preferred debt. Her said husband died insolvent. His largest creditor is John Neal, who holds a judgment against him as security for Allen Cochran for about $12,000 00, obtained at the November term, 1861, of Monroe superior court. There has been no administration upon Dumas' estate. Complainant, on account of her poverty, ignorance of business, and inability to give bond, has failed to take out letters. She has had assigned to her dower and twelve months' support. Neal has recently levied upon the only real estate left by her husband, beyond that assigned to her, upon which she claims the first lien for the payment of her preferred debt. Neal's execution is proceeding illegally, for the reason that there is an entry of a levy on fifty-three bales of cotton, of date October 23d, 1865. This levy is entered dismissed on November 13th, 1865, by order of plaintiff's attorney. On the day of its dismissal there is entered a second levy upon the same amount of cotton, which is still undisposed of. This cotton was levied on as the property of Allen Cochran, the principal. Complainant therefore claims that, by reason of said dismissal said execution is satisfied, and at least said security discharged; also, that there cannot be a legal levy upon said land until some disposition is made of the last levy on the cotton. There being no administration upon her husband's estate, there is no one to set up this illegality. She has notified the ordinary of the necessity of an administration, and has demanded the appointment of the clerk of the superior court.

Prays that a sale under said levy may be enjoined; that complainant's claim may be decreed to be a preferred debt against the estate of her deceased husband, and that the writ of subpœna may issue.

Neal answered, in substance, as follows: Knows nothing

about the ante-nuptial contract mentioned, or about the marriage. Knows nothing as to said negro slaves and their hire, who was chargeable with same, or the amount; has no doubt that the hire was used by way of service. Has no knowledge of the kind of property, if any, or by whom received, from complainant's mother or Thomas J. Mann, or the value of said property. Defendant has no knowledge of the contract set out in complainant's bill as to work and labor of complainant. Having been a creditor long before said contract, he insists that Dumas could not make a voluntary gift to the use of himself and family, and thus encumber his estate with preferred claims, to the ruin and defeat of creditors. Knows nothing of the labor and service she performed, and if performed, it was such as was due by a wife. He believes she was, before her husband's death, a helpless invalid, and large amounts of labor, money and service were bestowed upon her by said Dumas. Has heard that complainant received the negro hire and appropriated it as she chose. Has been informed, as to hiring of complainant, that said Dumas promised his wife and daughter, if they would undertake this increased labor, he would be able to dress them better than he otherwise would. As to the proceeds of said boarding amounting to $1,000 00, this defendant does not believe any such thing. The dower and twelve months' support of complainant and children have absorbed all of the estate except the lands levied on. Defendant has been informed, and believes, that complainant has received the rent of the estate since the death of Dumas, of the annual value of $250 00, and for which she is bound as executrix in her own wrong, and asks that she may account on the hearing of this bill. The whole amount of his *fi. fa.* is due and unpaid. Has tried for years to make money out of Cochran's estate, at great expense, and has failed to do so. Admits levy on fifty-three bales of cotton. It was claimed by one Patten, and levy was dismissed by defendant's attorney for some defect in the papers, and was re-levied on the same day, on the same cotton, which is now claimed as not subject to said *fi. fa.* The cotton has long since been sold,

and the proceeds are now in the hands of a receiver, subject to the priorities which may finally be established. Defendant has no hope of ever realizing one cent from said fund.

Affidavits were read on the hearing of the motion for injunction, in support of the bill and answer respectively.

It appeared that James H. Dumas, as trustee for his wife, received of A. V. Mann, as administrator of Thomas J. Mann, $330 98, on March 5th, 1864.

The chancellor directed that the sheriff should proceed to sell the property levied on, and out of the proceeds deposit $400 00 in the office of the clerk of the superior court of Monroe county to cover the preferred claim of complainant.

To this order complainant excepted.

SPEER & STEWART, for plaintiff in error.

PEEPLES & HOWELL; CABANISS & TURNER, for defendants.

McCAY, Judge.

There was no reason for an injunction. The complainant, at best, had only a claim upon the fund the property might raise. We think, too, the court has held up enough of the fund. The use of the negroes by the family furnishes no fair ground of a charge against the husband. As to the claim for services, we think it is pushing the separate right of the wife very far. It was her duty to her husband, whilst she lived with him, to do these very things; she is not to be a drone in the hive. Our laws go very far in protecting the property of the wife against the husband's debts and extravagances. But the view taken by the plaintiff in error makes the husband the slave to work and provide for the wife, and she to set up and enjoy herself. Such claims come up very suspiciously, and may fairly be treated as frauds upon creditors. We think, too, her use of the property other than the dower or homestead, is a fair offset to her claims for labor. True, she got it under the judgment of the ordinary, but that judgment,

as the federal court has held, was void as against this debt. We will not disturb the decision of the chancellor. He did not abuse his discretion.

Judgment affirmed.